UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH A. SWEET, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:12-cv-439-SEB-TAB |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.     Introduction**

Plaintiff Joseph Sweet appeals Commissioner Carolyn Colvin's decision denying him disability insurance benefits and supplemental security income.  Sweet's severe impairments consist of depression, anxiety, schizophrenia with hallucinations, obesity, and degenerative disc disease of the lumbar spine.  The Administrative Law Judge denied Sweet's application for DIB and SSI after concluding that he could perform his past job as a mop assembler and that he is able to perform other jobs in the national economy.  Sweet contends that the ALJ's decision is erroneous for several reasons: (1) the ALJ failed to account for moderate limitations in concentration, persistence, and pace caused by his hallucinations, (2) the ALJ failed to fully consider the physical demands associated with his past work as a mop assembler, (3) the ALJ failed to account for limitations in stooping, and (4) the ALJ erroneously considered his daily activities as evidence of full-time employment and improperly labeled his medical treatment as routine.  For the reasons below, the Magistrate Judge recommends that Sweet's brief in support

of his appeal [Docket No. 16] be denied, and the Commissioner's decision be affirmed.

## II.     Discussion

### A.     Standard of Review

The Social Security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: Whether the plaintiff (1) is currently unemployed, (2) has a severe impairment, (3) has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations, (4) is unable to perform his past relevant work, and (5) is unable to perform any other work in the national economy.  20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–13 (7th Cir. 2009).  "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled."  *Id.*  The ALJ denied Sweet's application at steps four and five, concluding that he could perform his past job as a mop assembler and that he is able to perform other jobs in the national economy.

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).  "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected.

*Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Denton*, 596 F.3d at 425.

      B.      *Concentration, Persistence, and Pace*

Sweet contends that the ALJ's hypothetical at step five failed to account for his moderate limitations in concentration, persistence, and pace.  At step four, the ALJ addressed several factors relevant to concentration, persistence, and pace: hallucinations, memory, ability to complete tasks, concentration, understanding, following instructions, and the ability to make simple calculations.  [A.R. at 27.]  The ALJ also gave the greatest weight to the agency physicians who concluded that Sweet has:

> moderate limitations in ability to understand, remember, and carry out detailed instructions; moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderate limitations in ability to interact appropriately with the public; and moderate ability to get along with coworkers and peers without distracting them or exhibiting extremes.

[A.R. at 35.]

Taking the above findings into account, the ALJ formulated a hypothetical at step five that adequately accounted for Sweet's moderate limitations: "work should be simple and repetitive in nature, should not require reading or mathematics and should not require more than superficial interaction with the general public, co-workers and supervisors . . . ."[1]  [A.R. at 63.] Sweet emphasizes the moderate limitations imposed by his hallucinations [Docket No. 16 at 6–8], and claims that the phrase "simple and repetitive" is contrary to *O'Connor-Spinner v.*

---

[1] The hypothetical was modified to include no reading or math beyond the third grade level. [A.R. at 63.]

*Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

In *O'Connor-Spinner*, the Seventh Circuit explained that "[i]n most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. For example, the hypothetical in *O'Connor-Spinner* was problematic because it only limited the hypothetical worker to "routine, repetitive tasks with simple instructions" without noting any limitation imposed by concentration, persistence, and pace. 627 F.3d at 617. Similarly, in *Jelinek v. Astrue*, the ALJ improperly "limited his questioning of the expert to 'sedentary' and 'light' unskilled work" without noting that the plaintiff suffered from "'moderate limitations' in her abilities to concentrate, to complete a normal workday or workweek." 662 F.3d 805, 813 (7th Cir. 2011).

In contrast, the Seventh Circuit has "let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 620. This is exactly what the ALJ did in this case. It would have been preferable for the ALJ to have specified Sweet's mental impairments and note that they impose moderate limitations in concentration, persistence, and pace. However, the ALJ's hypothetical adequately accounted for limitations in concentration, persistence, and pace caused by hallucinations by noting that in addition to the limitation of "simple and repetitive tasks" that the hypothetical worker "should not require more than superficial interaction with the

general public, co-workers and supervisors . . . ."[2] [A.R. at 63.] Sweet fails to mention this part of the hypothetical, let alone explain why it does not sufficiently account for limitations in concentration, persistence, and pace.

Additionally, the Court notes that Sweet's counsel was present at the hearing and the ALJ specifically asked counsel whether he had any questions for the vocational expert and whether there was anything that the ALJ missed in questioning the vocational expert. [A.R. at 65.] Sweet's counsel did not object to the hypothetical and declined to ask any questions. [*Id.*] This additional fact further undermines Sweet's contention that the ALJ erred in posing a hypothetical that adequately accounted for concentration, persistence, and pace. *Martinez v. Apel*, 50 F. Supp. 2d 809, 812 (N.D. Ill 1999) ("[P]laintiff's counsel did not object to the question and, when asked by the ALJ if he had anything further for Mr. Klien, counsel declined to bring the matter to the court's attention, despite the fact that his client had testified previously about her depression."); *see also Griffith v. Astrue*, No. 1:07-CV-1427-WTL-TAB, 2009 WL 662628, at *7 (S.D. Ind. Mar. 12, 2009) ("Although it is true that the ALJ interrupted the VE's response to a question with a question of his own, Mr. Griffith's counsel did not object to the ALJ doing so, and the ALJ did not prevent counsel from asking for a response or repeating the question."); *Maxfield v. Astrue*, No. , 2008 WL 424313, at *8 n.2 (S.D. Ind. Feb. 13, 2008) (noting that counsel failed to object to the ALJ calling a witness). Accordingly, the Magistrate Judge concludes that this challenge to the ALJ's decision at steps four and five fails.

---

[2]With respect to the part of the hypothetical related to his memory and ability to follow instructions—which Sweet does not challenge—the ALJ limited the hypothetical job to one that does not require reading and mathematic skills above that of a third grader. [*Id.*]

5

### C. *Physical Impairments*

Sweet also claims that the ALJ erred at steps four and five when concluding that he could perform past relevant work as a mop assembler and that he could perform other jobs in the national economy. Addressing past relevant work, Sweet noted on SSA form 3368 that as a mop assembler he lifted 100 pounds or more, which included lifting boxes full of finished product and some dock work loading and unloading trucks. [A.R. at 167–68.] Sweet also noted that he stood eight hours a day. [A.R. at 168.] The ALJ did not address either aspect of Sweet's past work, which undermines the ALJ's conclusion that Sweet could perform past work as a mop assembler. In fact, the ALJ merely stated without any meaningful analysis that he concurred with the vocational expert's conclusion that Sweet could perform past relevant work as a mop assembler. [A.R. at 35.] *See Rinaldi-Mishka v. Astrue*, No. 12-C-1305, 2013 WL 3466844, at *12 (N.D. Ill. July 8, 2013) ("[T]he ALJ 'must at least minimally articulate' her analysis to allow meaningful review.").

On appeal, the Commissioner contends that at the administrative hearing Sweet indicated that he stood most of the work day and that he occasionally lifted 20 pounds. But this reasoning was not set forth in the ALJ's decision and is simply post-hoc reasoning. *See Shockley v. Astrue*, No. 1:08-CV-78, 2009 WL 1456956, at *4 (N.D. Ind. May 22, 2009) ("This Court cannot rely on the post-hoc reasoning provided by the Commission, and it is therefore disregarded."). Accordingly, the lack of analysis and disregard for SSA form 3368 amounts to an error. However, whether this error requires reversal turns on whether other jobs exist in the national economy that Sweet can perform. As discussed below, Sweet can perform other jobs in the national economy and therefore this error is harmless.

The ALJ concluded that Sweet can work as a housekeeper or hand packager. [A.R. at 36–37.] Sweet only challenges this conclusion to the extent that the ALJ did not adequately set forth the limitations imposed by stooping as part of his RFC finding or include them in the hypothetical to the vocational expert. "Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist." SSR 83-10. Sweet contends that the ALJ failed to mention stooping or consider Dr. Rudolph's conclusion that he could flex forward only 10 degrees of the normal 90 degrees. [A.R. at 386.]

Sweet is correct that the ALJ did not specifically mention the term "stooping" or the exact degree of limitation. [*See* A.R. at 30, 63.] Nevertheless, it is apparent from the ALJ's decision and Dr. Rudolph's assessment that the ALJ considered limitations in stooping. The ALJ considered Dr. Rudolph's conclusion that "[t]here were signs of tenderness to palpation on the lower back with significantly decreased range of motion . . . ." [A.R. at 30.] This conclusion unmistakably refers to stooping because the only part of Dr. Rudolph's assessment that reasonably supports this conclusion is the range of motion chart indicating a 10 degree limitation under the category of spine and lumbar. [A.R. at 386.] Thus, the ALJ adequately considered Dr. Rudolph's assessment and accounted for Sweet's limitations in stooping. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (explaining that the ALJ need not mention every piece of evidence in the record, so long as he builds a logical bridge from the evidence to his conclusion). *But see Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (explaining that the ALJ completely failed to address either of the doctor's stooping assessments).

Even if the ALJ erred by not mentioning the exact degree of limitation in stooping, it is evident from the ALJ's analysis that he gave little weight to Dr. Rudolph's stooping assessment.

The ALJ noted—and Sweet does not challenge on appeal—that Sweet's "back impairment began several years prior to the alleged onset date, . . . [and] [t]he fact that the impairment did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." [A.R. at 30.] In light of this uncontested conclusion, it was not necessary for the ALJ to mention limitations in stooping to the vocational expert.[3]

    D.    *Credibility Determination*

Sweet also challenges the ALJ's credibility determinations that relate to daily activities and medical treatment. At the outset, the Court addresses Sweet's one sentence argument that the ALJ improperly used boilerplate language. The ALJ opined:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.[4]

[A.R. at 29.]

Sweet is correct that the Seventh Circuit has rejected this exact type of boilerplate language in some cases. *See Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011). In those cases, the ALJ used the above boilerplate language to reject evidence "without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard

---

[3] The ALJ, however, did mention physical limitations related to lifting, carrying, climbing, crawling, and kneeling. [A.R. at 63.]

[4] Sweet's one sentence argument unsupported by citation to the record does not identify the boilerplate language. [Docket No. 16 at 12.] Presumably, this is the boilerplate language that Sweet is referencing.

to whether the boilerplate paragraph has any relevance to the case." *Bjornson*, 671 F.3d at 644–45. The court explained that this problem is compounded when this boilerplate language appears before the credibility determination. *Id.* at 645 ("A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.").

While the ALJ failed to heed the warnings in *Bjornson* not to set forth boilerplate conclusions before making a credibility assessment, in the Magistrate Judge's view this alone does not necessarily warrant remand. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining that remand is not required when it is predictable with great confidence that the agency will reach the same result on remand). The critical issue is whether the ALJ built a logical bridge from the evidence in the record to his conclusion. The ALJ's decision begins with generic boilerplate language, but is followed by an adequate discussion of the evidence. The ALJ carefully considered the medical evidence, daily activities, a third party report by Jenny Barnett, the reasons Sweet stopped working at Daum Trucking, and consultative examinations, and built a logical bridge from this evidence to his conclusion. [A.R. at 29–35.] Therefore, the ALJ did not create reversible error in using boilerplate language at the beginning of his analysis.

Turning to the ALJ's substantive analysis of Sweet's daily activities, Sweet's one sentence argument asserts that the ALJ incorrectly considered his daily activities as evidence of full-time work capacity. As Sweet points out, in *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), the court noted that there are "critical differences between activities of daily living and

9

activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer."  "The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Id.*

While Sweet is correct that the ALJ must be careful when relying on daily activities to determine employment abilities, *Bjornson* does not prohibit the ALJ from considering daily activities.  As discussed, *Bjornson* merely cautions ALJs to recognize differences between daily activities and the ability to work full-time.  Indeed, the Seventh Circuit has permitted consideration of daily activities in numerous other cases.  *See, e.g.*, *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); *Wheeler v. Barnhart*, 177 F. App'x 478, 482 (7th Cir. 2006); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).  With this background in mind, Sweet's single sentence, conclusory argument does not explain how the ALJ crossed this line in considering Sweet's daily activities or otherwise show that the ALJ erred.  [Docket No. 16 at 13.]  Sweet's reply brief also does not provide any meaningful analysis.  [Docket No. 22 at 8.]  Therefore, the Court need not address this argument any further.  *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (explaining that perfunctory, undeveloped, and conclusory arguments are deemed waived).

Sweet also contends that the ALJ erred when concluding that he received "essentially routine" treatment.  [A.R. at 33.]  Without citation to any legal authority, Sweet claims that his multiple psychiatric hospitalizations and prescriptions for Risperdal and OxyContin do not amount to routine treatment, and thus should be given greater weight.  [Docket No. 16 at 13.]

10

The ALJ, however, considered this evidence and adequately set forth his reasons for concluding that it amounted to routine treatment. *See Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (explaining that the ALJ must consider the entire record and give specific reasons for the weight given to the evidence). The ALJ explained that:

> The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. The inpatient treatment that the claimant received was voluntary and relatively short in duration, with discharge notes indicating no signs of psychotic symptoms.

[A.R. at 33.] Sweet's brief does not address this reasoning nor does he explain why any error in the ALJ's reasoning could reasonably lead to a different result if this case is remanded. [Docket No. 16 at 13.] Sweet's reply brief also does not provide any meaningful analysis. The reply brief merely asserts that the parties disagree about this issue. [Docket No. 22 at 8.] Accordingly, the Magistrate Judge does not find that the ALJ's credibility determination amounts to reversible error.

### E. *Dr. Barbera*'s *Opinion*

As a final matter, Sweet briefly mentions in a footnote that the ALJ inappropriately treated Dr. Barbera as an examining source rather than a treating physician. [Docket No. 16 at 7 n.6.] Such a distinction is normally important because it dictates how much weight should be given to the physician's opinion. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record."). At one point, the ALJ states that "Dr. Barbara has a treating relationship with the claimant." [A.R. at 34.] Later, the ALJ states that she is "an examining

11

physician with a relatively intermittent treatment history." [A.R. at 35.] These seemingly inconsistent statements would normally be problematic because Dr. Barbera concluded that Sweet was disabled due to his mental problems, which is contrary to the ALJ's decision. [A.R. at 34.]

However, despite the ALJ's failure to properly identify Dr. Barbera as a treating or examining physician, the reason that the ALJ gave her opinion little weight was not because he designated her as an examining physician, but because her opinion was inconsistent with the record. *See Skarbek*, 390 F.3d at 503 ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'") (internal citations omitted). The ALJ noted that the mental status examinations were generally not indicative of disabling mental signs, that she only saw Sweet for eight sessions over the course of a year, and that his GAF scores had improved from 50 to 60. [A.R. at 34–35.] While some of the ALJ's reasoning for giving Dr. Barbera's opinion little weight appears questionable, Sweet has not challenged the ALJ's reasons for concluding that her opinion is "generally inconsistent by [sic] the objective medical evidence as a whole." [A.R. at 35.] Accordingly, the Magistrate Judge need not address this issue any further. *See Williamson v. Astrue*, No. 08-CV-3906, 2010 WL 2858834, at *10 n.1 (N.D. Ill. July 16, 2010) ("Because the arguments are undeveloped, the court need not address them.").

**III.     Conclusion**

For the reasons above, the Magistrate Judge recommends that Sweet's brief in support of his appeal [Docket No. 17] be denied, and the Commissioner's decision be affirmed.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

DATED:    08/14/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Steven R. Jacobs
srjindy@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov