UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH AUGUST SWEET,  )<br>  )<br>Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>CAROLYN W. COLVIN Acting  )<br>Commissioner of the Social Security  )<br>Administration,  )<br>Defendant.  )  | No. 1:12-cv-00439-SEB-TAB |

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION**

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") finding Plaintiff Joseph August Sweet not entitled to disability insurance benefits ("DIB") and supplemental social security income ("SSI"). The Administrative Law Judge ("ALJ") denied Mr. Sweet's application for DIB and SSI after concluding that he could perform his past job as a mop assembler and that he is able to perform other jobs in the national economy. This case was referred to Magistrate Judge Baker for consideration. On August 14, 2013, Magistrate Judge Baker issued a report and recommendation that the Commissioner's decision be upheld because it was supported by substantial evidence and was otherwise in accord with the law. This cause is now before the Court on Plaintiff's Objections to the Magistrate Judge's Report and Recommendation.

**Standard of Review**

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368–

369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

## Discussion

Mr. Sweet objects to the Report and Recommendation on three grounds. First, he contends that the Magistrate Judge erred in determining that the ALJ's hypothetical at step five adequately accounted for Sweet's moderate limitations in concentration, persistence, and pace.

Pl.'s Objections 2–6. Second, he argues that the Magistrate Judge wrongly concluded that although the ALJ did not specifically mention "stooping" or the exact degree of limitation at steps four and five, it is clear from the ALJ's decision that he considered those limitations. Pl.'s Objections 6–9. Finally, Mr. Sweet challenges the Magistrate Judge's recommendation that the Court uphold the ALJ's credibility finding. Pl.'s Objections 9–12. We address these arguments in turn.

## I.     Limitations in Concentration, Persistence, and Pace

Mr. Sweet argues that the ALJ erred by failing to incorporate his step three finding that Mr. Sweet had moderate difficulties maintaining concentration, persistence, and pace into both the residual functional capacity assessment ("RFC") and the hypothetical question he posed to the vocational expert ("VE"). Pl.'s Br. 6. Instead, the ALJ's hypothetical set forth only that "work should be simple and repetitive in nature, should not require reading or mathematics and should not require more than superficial interaction with the general public, co-workers and supervisors . . . ."[1] R. at 63. Mr. Sweet maintains that this omission fails to comply with the Seventh Circuit's ruling in *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), in which the court recognized that "[i]n most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id.* at 620 (citation omitted).

The Court finds that the absence of Mr. Sweet's moderate difficulties maintaining concentration, persistence, and pace from both the RFC and the hypothetical question is not reversible error, despite the general rule that when the ALJ poses a hypothetical question to the VE, the ALJ must orient the VE to the totality of the claimant's limitations. *O'Connor–Spinner*,

---

[1] The hypothetical was modified to include no reading or math beyond the third grade level. R. at 63.

627 F.3d at 619 (advising that "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical"). Although the general rule of *O'Connor–Spinner* favors including the phrase "concentration, persistence, or pace" in the hypothetical question, the Seventh Circuit has not required the inclusion of those exact words if the case falls under one of three exceptions.[2] *Id.* at 619–620.

The first exception is satisfied if, prior to hearing the ALJ's hypothetical question, the VE independently learns of the claimant's limitations by hearing testimony or reviewing the claimant's medical records, as it may be presumed that the VE's answer accounts for her knowledge of the claimant's limitations. *O'Connor–Spinner,* 627 F.3d at 619. *See also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) ("When the record supports the conclusion that the vocational expert considered the medical reports and documents, his responses are probative of both residual functional capacity and which jobs a claimant reasonably can perform, even if the hypothetical question itself does not take into account every aspect of the claimant's impairments."). This exception generally is not applied in cases where the ALJ poses "a series of increasingly restrictive hypotheticals to the VE, because in such cases we infer that the VE's attention is focused on the hypotheticals and not on the record." *O'Connor–Spinner,* 627 F.3d at 619.

The VE in Mr. Sweet's case independently learned of his limitations by reviewing his records prior to hearing the ALJ's hypothetical question. R. at 61. The ALJ specifically asked the

---

[2] Because the Court finds that the first exception clearly applies to Mr. Sweet's case, it declines to address the second and third exception. The Seventh Circuit describes the second exception as one in which "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform," and the third exception as one in which, while "the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were." *O'Connor-Spinner*, 627 F.3d at 619–20.

VE, "I understand you had an opportunity to review [Mr. Sweet's] file, is that correct?" *Id.* The VE then responded, "I have, yes sir." *Id.* Thus, under *O'Connor–Spinner*, it may be presumed that the VE's answer accounted for her knowledge of the Mr. Sweet's limitations even though the hypothetical question itself did not take into account Mr. Sweet's moderate difficulties maintaining concentration, persistence, and pace. Furthermore, the ALJ posed just one hypothetical to the VE, rather than a series of increasingly restrictive hypotheticals. R. at 61–65. Thus, there is no basis to infer that the VE's attention was focused on the hypotheticals instead of the record.

The Court therefore finds that the absence of Mr. Sweet's moderate difficulties maintaining concentration, persistence, and pace from both the RFC and the hypothetical question is not grounds for reversal.

## II.     The exclusion of "stooping" from the ALJ's RFC and hypothetical question

Mr. Sweet alleges that the ALJ's decision should be reversed, as the ALJ did not adequately set forth limitations with respect to stooping as part of his RFC finding and also failed to include them in the hypothetical question posed to the VE. Pl.'s Objections 6. The Court disagrees. Instead, we find that that ALJ properly considered conflicting evidence in regards to Mr. Sweet's ability to stoop, and thus, the ALJ's conclusions about Mr. Sweet's physical impairments are based on substantial evidence.

Mr. Sweet argues that the Magistrate Judge acknowledged the adverse precedent of *Golembiewski v. Barnhart*, 322 F.3d 912 (7th Cir. 2003), but failed to follow it. Pl.'s Objections 6. However, *Golembiewski* is readily distinguishable from the facts in Mr. Sweet's case. In *Golembiewski*, the Seventh Circuit explained that "although the ALJ need not discuss every piece of evidence in the record, . . . the ALJ may not ignore an entire line of evidence that is

5

contrary to the ruling." *Id.* at 917 (citing *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). In that case, with respect to stooping, the Seventh Circuit found that the ALJ's decision "contain[ed] no discussion of Golembiewski's limited ability to bend on account of his bad back." *Id.*

Such is not the case here. The ALJ did consider limitations in stooping, as the opinion includes evidence with respect to both Mr. Sweet's back pain and his ability to bend. R. at 29–30. The ALJ acknowledged Dr. Rudolph's report that "[t]here were signs of tenderness to palpation on the lower back with significantly decreased range of motion . . . ." R. at 30. However, the ALJ also noted that Mr. Sweet's testimony and the medical record contained conflicting evidence regarding limitations on Mr. Sweet's range of back motion. R. at 29–30.

First, the ALJ stated that "the evidence supports a history of complaints of back pain," and included a detailed description of results from an MRI of Mr. Sweet's spine from December 2, 2008. R. at 29. The ALJ mentioned conflicting reports on whether medication was successful in managing Mr. Sweet's pain. R. at 29–30. He also noted that Mr. Sweet began voluntary use of a cane, alleging that the cane made walking easier, but that "a physician did not recommend the cane" and that Dr. Rudolph noticed that when Mr. Sweet walked with the cane, "the cane was in the air." R. at 30. The ALJ also noted that much of Dr. Rudolph's examination led her to conclude that Mr. Sweet had normal ability. *Id.* The doctor noted that Mr. Sweet had "normal gait and posture, normal joints with no inflammation or effusion, ability to squat and stand up from squatted, normal muscle strength and tone . . . ." *Id.*

The ALJ explained that "the description of the symptoms and limitations that the claimant has provided . . . has generally been inconsistent and unpersuasive," and that Mr. Sweet failed to mention any significant physical limitations on his Function Report dated January 8,

2009. R. at 30. The ALJ stated that Mr. Sweet's "back impairment began several years prior to the alleged onset date, . . . [and] [t]he fact that the impairment did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." R. at 30.

Mr. Sweet contends the ALJ's failure to mention Dr. Rudolph's conclusion that Mr. Sweet could flex forward only 10 degrees of the normal 90 degrees created reversible error. However, as the Magistrate Judge recognized, the ALJ did mention Dr. Rudolph's conclusion that Mr. Sweet had a "decreased range of motion," R. at 30, and the ALJ need not discuss every piece of evidence in the record. *Golembiewski*, 322 F.3d at 917. Unlike the ALJ in *Golembiewski*, it is clear that the ALJ in Mr. Sweet's case did not "ignore an entire line of evidence that was contrary to his finding." 322 F.3d at 917. The ALJ's inclusion of the evidence above indicates proper consideration of these conflicting reports on Mr. Sweet's ability to bend and move his back.

The Court finds that that ALJ properly considered conflicting evidence in regards to Mr. Sweet's ability to stoop, built a logical bridge from that evidence to his conclusions in crafting the RFC, and that the ALJ's exclusion of a limitation on "stooping" was sufficiently supported by evidence in the record.

### III. The ALJ's credibility finding

Mr. Sweet challenges the Magistrate Judge's recommendation that the Court uphold the ALJ's credibility finding, relying on three lines of argument. Specifically, Mr. Sweet takes issue with the ALJ's use of boilerplate language in his credibility assessment, the ALJ's considerations of Mr. Sweet's daily activities, and the ALJ's characterization of Mr. Sweet's treatment as "essentially routine."[3] Pl.'s Objections 9–12.

---

[3] The Magistrate Judge addressed an additional objection that Mr. Sweet briefly mentioned in a footnote. Rep. 11–12. Mr. Sweet argued that the ALJ treated Dr. Barbera as an examining source rather than a treating physician. Pl.'s

Mr. Sweet first argues that "extensive credibility boilerplate in an ALJ's decision does not have substantive content or meaning." Pl.'s Br. 12. However, the ALJ's use of boilerplate language in this case is not fatal.

Before the ALJ detailed 1) the evidence regarding Mr. Sweet's physical and mental impairments and 2) his reasoning for according testimony and evidence varying relative weights, the ALJ opined, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[4] R. at 29.

As the Magistrate Judge correctly noted, the Seventh Circuit has rejected use of boilerplate language when it is used "without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case." *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012). Additionally, the Seventh Circuit has expressed concern when boilerplate conclusions are set out before the credibility assessment has been explained. *Id.* at 645 ("A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the passage implies that ability to work is

---

Br. 7 n.6. The Magistrate Judge explained that the ALJ may have failed to properly identify Dr. Barbera as a treating or examining physician, but that the failure was harmless, as the ALJ properly explained that he gave the doctor's opinion little weight because it was inconsistent with the record. Dkt. 25 at 12 (citing *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). Mr. Sweet makes no objection to the Magistrate Judge's reasoning, thus the Court declines to address this issue. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009) (explaining that the district court may defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party).

[4] The Magistrate Judge and this Court presume that this is the boilerplate language to which Mr. Sweet objects; however, Mr. Sweet has not identified specific language in his Brief or his Objections to the Magistrate Judge's Report and Recommendation.

determined first and is then used to determine the claimant's credibility. That gets things backwards."). However, the fact that an ALJ used boilerplate language "does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013).

Concerns about the use of boilerplate language are remedied in Mr. Sweet's case, as the ALJ followed his boilerplate language with detailed and logical discussion of the evidence and his reasoning. R. at 29–35.

The ALJ followed the boilerplate language with a discussion of the evidence concerning Mr. Sweet's physical impairments. *Id.* at 29–30. This evidence included detailed results from an MRI on December 2, 2008, treatment for pain throughout 2008 and 2009, the testimony of Dr. Rudolph concerning an examination in January of 2010, and details concerning Mr. Sweet's follow-up examination with his primary care physician in January 2010. *Id.* at 30. Following his discussion of the evidence, the ALJ found that Mr. Sweet's description of his symptoms and limitations had been inconsistent, the treatment had been "essentially routine and conservative in nature," and that his medications had been relatively effective in controlling the symptoms. *Id.* Additionally, the ALJ noted that Mr. Sweet's back impairment began several years before the alleged onset date, and that Mr. Sweet pointed to "no precipitating factor" that might explain a sudden and significant deterioration in functioning. *Id.* Moreover, the ALJ noted that "there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The claimant stated that he stopped working due to a disagreement with the boss (Exhibit 2E)." *Id.* at 34. This extensive discussion allows the Court to sufficiently examine the evidence that the ALJ relied on when concluding that Mr. Sweet was not fully credible.

After his discussion and reasoning regarding Mr. Sweet's physical impairments, the ALJ next detailed the evidence regarding Mr. Sweet's mental impairments. *Id.* at 30–35. The ALJ noted a history of receiving anxiety medications from more than one provider, before Mr. Sweet reported stress to his primary care physician in July 2009, when he was diagnosed with anxiety disorder not otherwise specified and referred to a psychiatrist. *Id.* at 30–31. Specifically, the ALJ pointed out that Mr. Sweet had never mentioned hallucinations to his primary care physician. *Id.* at 31. Next, the ALJ described the evaluation performed by Dr. Barbera just two months later, when Mr. Sweet reported that he had been having hallucinations for the past 18 months. *Id.* The ALJ's opinion noted further visits with Dr. Fletcher and Dr. Barbera from September through December of 2009, and Mr. Sweet's voluntary admission to St. Vincent Health on December 22, 2009 for suicidal ideations, auditory hallucinations, and rapid mood shifts, among other symptoms. *Id.* The ALJ also noted that reports indicated that Mr. Sweet's hallucinations were entirely gone upon discharge, he exhibited logical thoughts, normal attention and concentration, intact judgment and memory, and that his interactions with staff were appropriate during the admission. *Id.* at 32.

The ALJ continued by noting Mr. Sweet's conflicting reports to medical personnel, including visits with Dr. Barbera and Dr. Rasmussen, before describing Mr. Sweet's admission to St. Vincent Stress Center in March of 2010. *Id.* The ALJ also noted Mr. Sweet's GAF assessment scores at the time, which indicated only moderate symptoms or moderate difficulties in social or occupational functioning. *Id.*

The ALJ's lengthy discussion of the evidence concerning Mr. Sweet's mental impairments again allows the Court to sufficiently examine the evidence he relied on in making a credibility assessment. Specifically, the ALJ noted Mr. Sweet's failure to report symptoms to his

primary care physician, inconsistent statements regarding substance use, his ability to carry on daily activities and continued relationships with friends and family, and the report by Jenny Barnett, Mr. Sweet's sister, in his assessment of Mr. Sweet's credibility. *Id.* at 30–35. He noted that by Mr. Sweet's own account, he stopped working because of a disagreement with his boss. *Id.* at 34. The ALJ noted that Mr. Sweet's employer reported no significant problems with any of the reported issues during the period of time Mr. Sweet was employed, other than the rule violation that led to his termination. *Id.* Additionally, the ALJ details his reasoning for giving more or less weight to the assessments of Dr. Rasmussen, Dr. Barbera, and the physicians employed by the State Disability Determination Services. *Id.* at 34–35.

Thus, as the Magistrate Judge recognized, while the ALJ's discussion begins with boilerplate language, an adequate discussion of the evidence and the ALJ's reasoning follows. The Court finds that use of boilerplate language in the ALJ's analysis was not reversible error.

Next, Mr. Sweet argues that the ALJ incorrectly found that Sweet's activities of daily living were evidence of full-time work capacity. Pl.'s Objections 9. The Court disagrees, finding that the ALJ reasonably relied on a variety of factors and adequately outlined sufficient evidence to support his conclusion that Mr. Sweet was not disabled. Consideration of daily activities was not an error.

As the Magistrate Judge pointed out, the Seventh Circuit permits consideration of daily activities. Rep. 10. *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); *Wheeler v. Barnhart*, 177 F.App'x 478, 482 (7th Cir. 2006); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). In fact, the regulations specifically instruct an ALJ to consider a claimant's activities of daily living in evaluating a claimant's symptoms, including pain. 20 C.F.R. § 404.1529(c)(3)(2012). A

problem arises if the ALJ places "undue weight" on such activities. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008).

Mr. Sweet relies on *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), where the court noted that there are "critical differences between activities of daily living and activities in a full-time job," and that "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Id.* at 647.

While the Court recognizes the danger in drawing such conclusions, the ALJ in Mr. Sweet's case has not drawn any impermissible analogies between the activities of daily living and the activities in a full-time job. He did not reason that Mr. Sweet's daily activities prove that he could perform the activities of a full-time job, but simply mentions, as one of many factors used to assess Mr. Sweet's symptoms, that "[t]he claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. at 33.

Additionally, the ALJ did not place undue weight on Mr. Sweet's ability to perform activities of daily living. The ALJ considered many other facts in making a credibility assessment, including testimony by Mr. Sweet's sister, medical records and testimony of several doctors, Mr. Sweet's inconsistent reporting of symptoms, and evidence about his termination from employment. *Id.* at 29–35. The Court therefore finds that the ALJ's discussion of Mr. Sweet's daily activities was proper.

Finally, Mr. Sweet contends that the ALJ erred when concluding that Mr. Sweet received "essentially routine" treatment. Pl.'s Objections 11 (quoting R. at 33). Mr. Sweet argues that "multiple psychiatric hospitalizations are not 'routine'" and points to prescriptions for Risperdal and OxyContin, to suggest that his treatment was not routine. *Id.* at 11–12.

Mr. Sweet's argument essentially asks the Court to reweigh the evidence. He does not explain how the ALJ failed to make a credibility determination that was supported by substantial evidence. Instead, this argument highlights specific pieces of evidence that could support a finding of disability, when the proper question before the Court is whether there is substantial evidence to support the ALJ's decision. *Dixon*, 270 F.3d at 1176.

The Court finds that the ALJ's opinion is supported by substantial evidence. His opinion reflects his consideration of Mr. Sweet's multiple psychiatric hospitalizations and his medications and adequately set forth his reasons for concluding that Mr. Sweet's treatment was routine. R. at 29–35. The ALJ described varied and conflicting evidence in the record, linked the evidence to his conclusions, and explained that the medical records reveal that "the medications have been relatively effective in controlling the claimant's symptoms. The inpatient treatment that the claimant received was voluntary and relatively short in duration, with discharge notes indicating no signs of psychotic symptoms." *Id.* at 33.

Thus, the Court finds no basis upon which to conclude that the ALJ's characterization of Mr. Sweet's treatment as "essentially routine" was not supported by substantial evidence.

## Conclusion

For the foregoing reasons, the Court finds that none of Mr. Sweet's objections to the Magistrate Judge's Report and Recommendation has merit. First, the absence of Sweet's moderate difficulties maintaining concentration, persistence, or pace from the ALJ's hypothetical at step five is not reversible error, as the record shows that the VE independently learned of the Mr. Sweet's limitations by reviewing the claimant's records prior to hearing the ALJ's hypothetical question. Second, despite the fact that "stooping" is not mentioned in the RFC and hypothetical, the ALJ considered evidence on "stooping," and properly articulated the reasoning

supporting his conclusions about Mr. Sweet's physical abilities. Finally, the Court finds no basis on which to conclude that the ALJ failed to make a credibility determination that was supported by substantial evidence. Accordingly, the Plaintiff's objections to the Magistrate Judge's well-reasoned Report are OVERRULED and we ADOPT the recommendations set forth in the Magistrate Judge's Report and Recommendation.

    IT IS SO ORDERED.

Date: _____09/30/2013_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Steven R. Jacobs
srjindy@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov